**William C. HOSTETLER,**
**Plaintiff–Appellee,**

v.

**CONSOLIDATED RAIL CORPORATION,**
**Defendant–Appellant.**

No. 95–4298.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 28, 1997.

Decided Aug. 14, 1997.

388

Patrick J. Hart (argued and briefed), Scanlon & Gearinger, Akron, OH, for Plaintiff–Appellee.

Philip E. Howes (argued and briefed), Kimberly K. Wyss (briefed), Vogelgesang, Howes, Lindamood & Brunn, Canton, OH, for Defendant–Appellant.

Before: GUY, SUHRHEINRICH, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

This is a personal injury action involving a train/car collision at a Consolidated Rail Corporation ("Conrail") grade crossing. The issue in this appeal is simply what defendant Conrail's duty is with respect to placing extra-statutory warnings[1] such as lights and/or gates at the crossing to alert motorists to the presence of oncoming trains. Conrail argues that: (1) it was entitled to judgment as a matter of law, because the evidence established that the crossing was not "extra-hazardous" and, therefore, it owed no duty to install active warnings; and (2) it was entitled to a new trial because the jury instruction was erroneous. For the reasons that follow, we AFFIRM the judgment of the district court.

---

1. A railroad's minimum duty required by statute (OHIO REV.CODE § 4955.33) is to install crossbuck signs at all public crossings. Additional traffic control devices such as automatic gates and flashing lights are identified in case law as extra-statutory warnings since they are not required by statute.

## I. BACKGROUND

Conrail owns a train track that crosses Rohrer Road in Wayne County, Ohio. Rohrer Road runs north to south and intersects the track, which runs east to west, at a right angle. The intersection is at the top of a slight hill. For northbound automobile traffic, a westbound train approaches the intersection on the automobile's right. The speed limit on Rohrer Road is 55 mph. Approximately 30 trains were scheduled to cross the intersection on the day of the accident at an authorized speed of 60 mph.

Evidence, photographic and testimonial, demonstrated view obstructions in the form of houses, a barn, trailer, trees and buses along the right-hand side of the road for motorists traveling north on Rohrer Road toward the grade crossing. Hostetler's expert testified that because of the buildings and trees present in the southeast quadrant of this intersection, Conrail's grade crossing on Rohrer Road does not meet the minimum corner sight distance requirements as found in the U.S. Highway Grade Crossing Handbook published by the United States Department of Transportation. He testified that to meet minimum levels of safety, this crossing needed automatic lights and gates to warn motorists of an approaching train. There was also evidence that this crossing had a substantially higher accident prediction rate than the national average. Ohio statutory law requires, and Conrail maintains, a crossbuck railroad post and pavement markings at the intersection, and an advance warning sign down the road. There is no stop sign, crossing gate, flashing light, or any other warning not required by statute.

At about 9:00 a.m. on May 12, 1993, a Conrail train approached the Rohrer Road intersection from the east at 57 to 58 mph, sounding the engine horn.[2] The train's conductor observed an automobile approaching the intersection from the south. The conductor saw the car slow down, but not stop; he could see the driver looking straight ahead, and, realizing that the car was not going to stop, the conductor shouted a warning. The engineer looked to the south, saw the car coming up the incline toward the tracks, and immediately applied the train's emergency brake, but the train collided with the car.

The driver and only occupant of the car was the plaintiff Hostetler, who was seriously injured in the crash, and is now permanently and totally disabled as a result of those injuries. Hostetler testified that he has no memory of the accident but was familiar with the crossing, having traveled over it going to and from school.

Hostetler brought this diversity action against Conrail, alleging that Conrail caused the accident by negligently operating the train and by negligently failing to install active warnings at the crossing.[3] In addition to compensatory damages, he sought punitive damages, claiming that Conrail acted with actual malice in failing to install active warnings. At the conclusion of defendant's case, the court granted Conrail's motion for a directed verdict on both the train-operation claim and the claim for punitive damages. The only claim that went to the jury was the active-warnings claim.

The court instructed the jury that Conrail owed a duty to install active warnings at the crossing if the crossing was "extra-hazardous." However, over Conrail's objection, the court went on and instructed the jury that Conrail owed a duty of "ordinary care" with respect to the placement of active warnings at the Rohrer Road crossing. The court refused to submit Conrail's proposed jury interrogatories to test the basis of any finding that Conrail owed a duty to install active warnings.

The jury returned a verdict for plaintiff on August 28, 1995, awarding compensatory

---

2. The train was equipped with an "event recorder" which is a device that records certain aspects of the train's operation, such as train speed and horn blowing. The parties stipulated as to the accuracy of the recorder's printout.

3. Hostetler's mother, Phyllis Finch, was a plaintiff in this action and apparently remained a plaintiff at least through the close of the parties' cases at trial. Although the district court docket does not reflect any disposition of her claim, the verdict and judgment in this case speak only to plaintiff Hostetler. It appears that Ms. Finch's claim was withdrawn prior to the court's charging the jury. See JA at 317; Brief for Appellant at 4. Accordingly, we conclude that Ms. Finch is no longer a party to this case.

damages of $3,600,000 but apportioning comparative negligence of 35% to Hostetler. On September 7, 1995, the court revised the judgment, ordering that the net amount due to the plaintiff is $2,340,000. By judgment entry of November 3, 1995, the court denied Conrail's Rule 50(b) motion for judgment as a matter of law, and Rule 59 motion for a new trial. Conrail timely appeals from the district court's rulings.

## II. DISCUSSION

### A.

In its first assignment of error, Conrail asserts the trial court erred by failing to find as a matter of law that it had no duty to install active warning devices at the crossing. We disagree.

■ Initially, we note that in a diversity action, such as this one, a federal court applies state substantive law to state-law claims. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938) (citing *Baltimore & O.R. Co. v. Baugh*, 149 U.S. 368, 401, 13 S.Ct. 914, 927, 37 L.Ed. 772 (1893) (Field, J., dissenting)). Recently, we held that a federal court sitting in diversity reviews *de novo* legal determinations raised by a Rule 50 motion, FED. R. CIV. P. 50, and must apply the forum state's standard of review "only when a Rule 50 challenge is mounted to the sufficiency of the evidence supporting a jury's findings. No deference is appropriate in diversity cases to the trial court's resolutions of legal questions." *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 176 (6th Cir.1996). Significantly, "it is clear that we need show no deference to the trial court's assessment of the sufficiency of the evidence before a jury, even if state law so requires." *Id.* To the extent that appellant's motion is based on a challenge to the sufficiency of the evidence supporting the jury's verdict, we must look to the law of Ohio to determine the standard under which we review the motion. *See id.*

Ohio law requires that we construe the evidence most strongly in favor of the non-movant and that the motion be denied where the evidence is legally sufficient to support the verdict. *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 344 N.E.2d 334, 338 (1976). With these principles in mind, we turn to Conrail's arguments.

■ Conrail argues that a railroad owes a duty to erect extra-statutory warnings only at crossings which are "extra-hazardous" under the test set out in the case of *Hood v. New York, Chicago & St. Louis R.R. Co.*, 166 Ohio St. 529, 144 N.E.2d 104 (1957), and that the "extra-hazardous" rule is still the law of Ohio. Conrail also claims that the evidence in this case, as a matter of law, was that the Rohrer Road crossing was not "extra-hazardous." In short, Conrail contends that the trial court should have directed a verdict in its favor or granted its motion for judgment notwithstanding the verdict because there was not sufficient evidence submitted to support a finding that the crossing at issue was "extra-hazardous."

Plaintiff Hostetler counters by arguing that the "extra-hazardous" rule has been abrogated by *Matkovich v. Penn Central Transportation Co.*, 69 Ohio St.2d 210, 431 N.E.2d 652 (1982), and is no longer the law of Ohio. Hostetler further argues that the testimony from local residents about the crossing was sufficient to support a finding that Conrail failed to use ordinary care warranted by the circumstances.

■ This case turns on the adequacy of the existing warning devices at the Rohrer Road crossing and whether Conrail was under a duty to provide additional devices beyond those required by statute.[4] In *Hood*, the Ohio Supreme Court announced the rule that where a crossing is not "extra-hazardous," a railroad is under no duty to provide extra-statutory warnings. The rule was stated in the syllabus[5] as follows:

A railroad is under no duty to provide extrastatutory warnings at a grade crossing, where such warnings are not required by any order of the Public Utilities Commission, if there is no substantial risk that

4. It is undisputed that Conrail's advanced warning and cross-buck signs fully complied with Ohio's statutory requirements.

5. "The syllabus of a Supreme Court opinion states the controlling point or points of law decided in and necessarily arising from the facts of the specific case before the Court for adjudication." Rule 1(B), SUPREME COURT OF OHIO RULES FOR THE REPORTING OF OPINIONS.

a driver in the exercise of ordinary care may be unable to avoid colliding with a train that is being operated over the crossing in compliance with statutory requirements.

*Id.* at Syllabus 6. Although the Ohio Supreme Court lays down the law through the syllabus, we may look to the body of the opinion for explication of that syllabus law. *Zacchini v. Scripps–Howard Broad. Co.,* 433 U.S. 562, 566 n. 3, 97 S.Ct. 2849, 2853 n. 3, 53 L.Ed.2d 965 (1977) (quoting *Hart v. Andrews,* 103 Ohio St. 218, 132 N.E. 846, 847 (1921) ("The syllabus is the language of the court. The opinion is more particularly the language of the judge preparing the same, and yet so much of the opinion as is reasonably necessary to sustain the judgment must of necessity be concurred in by the court.")). Recognizing that nearly any railroad grade crossing involves a substantial risk of danger or hazard, the *Hood* court explained:

> In determining what, in addition to compliance with statutory and commission regulations, the *exercise of ordinary care may require of a railroad* at a grade crossing, the railroad should be able to assume that those who drive over the railroad's "right of way" at that crossing will do so in the exercise of ordinary care.

144 N.E.2d at 109 (emphasis added). The court went on to say that in that particular case, reasonable minds could not have concluded that there was a substantial risk that a motorist exercising the ordinary care required of him would be unable to avoid a collision with a train being operated in compliance with the statutory requirements. *Id.* For that reason, it was error to permit the jury to consider whether the railroad was under a duty to provide extra-statutory warnings. In other words, the railroad's duty to exercise ordinary care was satisfied at that particular crossing by the installation of only the statutorily required warnings. In sum, although *Hood* did not make specific reference in the syllabus to the standard of care required by the railroad, that case recognized that the railroad's duty is to exercise ordinary care; where a crossing is "unusually dangerous" or "extra-hazardous" a railroad may be required "in the exercise of ordinary care" to take additional steps to warn.

*Hood* remained the uncontested law of Ohio until 1982 when the Ohio Supreme Court decided *Matkovich v. Penn Central Transportation Company,* 69 Ohio St.2d 210, 431 N.E.2d 652 (1982). *Matkovich* has two syllabus parts:

1. A railroad has a duty of ordinary care to protect the safety of motorists.
2. Due to the serious nature of the hazard created, the lack of precautions of any kind at a railroad crossing can constitute wanton misconduct by the railroad.

*Id.* at Syllabus 1, 2.

Looking to the body of the opinion, it is clear that *Matkovich* was not the typical "extra-hazardous" crossing case, but a case in which an ordinarily non-hazardous crossing (non-hazardous because of its location as a spur and because of the infrequency of use of the track) was rendered hazardous by the railroad when it parked its train across the track at night, with no warnings and no lights. This was not a case in which the plaintiff argued that the railroad had a duty to erect extra-statutory warnings; the argument here was that the railroad had a duty to use ordinary care to protect the traveling public from the hazardous condition that it had created, and instead was wantonly careless. It is important to note that the court acknowledged that if the case were viewed as an "extra-hazardous" crossing case, then "the circumstances made the crossing particularly hazardous and required extra-statutorial [6] warnings. According to that rule, because Penn Central had a duty of ordinary care and failed to take any precautions its conduct could constitute wanton misconduct." *Matkovich,* 431 N.E.2d at 656. But the court declined to categorize the case that way, and said that, instead,

> a general rule of ordinary care in which all circumstances can be considered when determining the standard of care is more appropriate. Therefore, we hold that a railroad has a duty of ordinary care to protect the safety of motorists. This con-

6. An interesting word, but one which we have not found in our dictionary.

clusion modifies prior case law which required extra-statutory warnings only when a crossing was particularly hazardous.

*Id.*

*Matkovich* thus made it clear that the railroad's duty had always been, as *Hood* indicates, to use ordinary care; further, *Matkovich* extended that duty beyond the "extra-hazardous" crossing situations to hazards actually created by the railroad, such as were present when the railroad deliberately parked the train across a little-used spur, at night, and provided no warnings of any kind.

We are not persuaded by plaintiff's argument that *Matkovich* abrogates *Hood.* Rather, we find that *Hood* and *Matkovich* are complementary. *See Cates v. Consolidated Rail Corp.,* 100 Ohio App.3d 288, 653 N.E.2d 1229 (1995); *Glick v. Marler,* 82 Ohio App.3d 752, 613 N.E.2d 254 (1992); *Cox v. Consolidated Rail Corp.,* No. CA89–02–030, 1989 WL 99314 (Butler Cty. Ct.App. Aug. 28, 1993). Both *Hood* and *Matkovich* provide that the duty of the railroad is to use ordinary care. The test under *Hood,* not altered by *Matkovich,* is whether there is a substantial risk that a driver in the exercise of ordinary care—that is, one who effectively looks and listens at a point where such action would determine the presence of a train— would be unable to avoid colliding with a train being operated over the particular crossing in compliance with statutory and commission regulations. The railroad's duty is to exercise ordinary care, which, in any given case is defined by the nature of the crossing at issue. *Matkovich* merely makes clear that in making this determination we look at all the circumstances present; we consider whether the crossing is "extra-hazardous" (the issue in *Hood* ), as well as any other particularly dangerous conditions created or permitted by the railroad.

■ Thus, the "extra-hazardous" label is used to describe the condition of the particular crossing. If the crossing is "extra-hazardous" then ordinary care may require extra-statutory warnings by the railroad. Where there are no conditions that make the crossing "extra-hazardous," the railroad's duty to exercise ordinary care may be fulfilled by maintaining the required statutory warning devices. The degree of care required of the railroad continues to be ordinary, and that is not changed by the classification of the intersection.

■ We next address Conrail's argument that the evidence presented by the plaintiff was not sufficient to create an issue for the jury. Conrail contends that accurate photographs showed that the defendant's train was in plain view and would have been visible to the plaintiff if he had looked; hence, the crossing was not "extra-hazardous" as a matter of law. We disagree.

The plaintiff testified that he remembers nothing of the actual collision, but that he was familiar with the crossing, traveling over it regularly to and from school. The plaintiff also submitted evidence controverting Conrail's contention. Residents from the area, as well as plaintiff's expert, testified that the pictures "did not do justice" to the scene and that there were obstructions to the view. The photographs of the area show trees, bushes, and buildings that may have obstructed plaintiff's view. The evidence also demonstrated that Rohrer Road approached the crossing from the south at a slight incline. Finally, the crossing had a substantially higher accident prediction rate than the national average. If Conrail knew or should have known that this crossing was particularly dangerous or "extra-hazardous," then its failure to take appropriate safety measure may have breached its duty to use ordinary care in providing warnings at the crossing.[7]

We, therefore, find that there was sufficient evidence to create a jury issue on the

---

7. The evidence also indicated that the plaintiff may have breached his duty of care to the railroad to avoid a collision. A motorist who has breached his duty of ordinary care, however, is not automatically barred from pursuing a claim against the railroad. Pursuant to Ohio's comparative negligence statute, the negligence of a plaintiff precludes his recovery in a negligence action if his negligence represents more than 50% of the negligence that proximately caused

his loss or injury. Ohio Rev.Code § 2315.19. In the present case, genuine issues of material fact existed as to the comparative negligence of the parties and as to the proximate causes of plaintiff's injuries and, therefore, the case was properly submitted to the jury. *See Hicks v. Consolidated Rail Corp.,* 92 Ohio App.3d 636, 637 N.E.2d 19, 22 (1993); *see Stoler v. Penn Cent. Transp. Co.,* 583 F.2d 896 (6th Cir.1978).

question of whether Conrail was negligent in failing to provide more than the minimum statutory warning devices at this crossing. We further find that there was sufficient evidence to permit the jury to find by a preponderance that the accident occurred because of Conrail's negligence in maintaining an "extra-hazardous" railroad crossing and its failure to exercise ordinary care. Conrail's first assignment of error is overruled.[8]

### B.

In its second assignment of error, Conrail asserts that it is entitled to a new trial because of an erroneous jury instruction. Jury instructions are reviewed " 'as a whole in order to determine whether they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its decision.' " *O-So Detroit, Inc. v. Home Ins. Co.*, 973 F.2d 498, 502 (6th Cir.1992) (quoting *Cipriano v. Mercantile Ins. Co. of America*, 284 Mich. 346, 279 N.W. 855, 857 (1938)). A judgment may be reversed if the instructions viewed as a whole, were confusing, misleading and prejudicial. *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 72–73 (6th Cir.1990).

The only issue submitted to the jury was whether the defendant had a duty to install additional traffic control devices at the crossing. The instructions challenged by Conrail stated:

> In order to establish liability on the part of the defendant, plaintiff must prove by a preponderance of the evidence that a driver approaching the Rohrer Road crossing with caution, looking and listening for a train and prepared to yield if a train is coming, faces a substantial risk of colliding with a train that is traveling within the authorized track speed that is approaching the crossing with its horn blowing.

> It is the duty of a railroad company to exercise ordinary care under the circumstances to warn motorists of an approach

of trains at a crossing by adopting a reasonably effective method commensurate with the danger at the crossing.

> What constitutes a reasonable and timely warning depends upon the surrounding circumstances shown by the evidence in the case, such as, the amount and character of vehicular and other travel over the crossing, the extent and character of train movement, the control and speed of trains, and the character of the highway and the crossing itself.

> A motorist about to enter a highway railroad crossing owes a duty to stop and not proceed under certain conditions....

> ....

> Plaintiff alleges that the Rohrer Road crossing was unreasonably dangerous, thereby creating a duty of Conrail to install automatic gates and flashing lights at the crossing. The Rohrer Road crossing is guarded by railroad crossbuck signs. Railroads are not required to install any additional warning signs at grade crossings unless the crossing is extremely hazardous.

For the reasons we have stated above, we conclude that under Ohio law, a railroad has a duty to use ordinary care to protect the safety of motorists. *See Matkovich v. Penn Cent. Transp. Co.*, 69 Ohio St.2d 210, 431 N.E.2d 652, 656 (1982); *Carpenter v. Consolidated Rail Corp.*, 69 Ohio St.3d 259, 631 N.E.2d 607, 611 (Ohio 1994). The duty to use ordinary care may require extra-statutory signals if the crossing is "extra-hazardous." The district court's instruction properly informed the jury as to the proper standard.

Conrail also argues that it is entitled to a new trial because of the court's refusal to submit its proposed interrogatories to the jury. Conrail recognizes that submission of interrogatories by the court to a jury is discretionary. FED.R.CIV.P. 49(b). *Romano v. Howarth*, 998 F.2d 101 (2d Cir.1993). We find no abuse of discretion.

---

8. We are aware of this court's previous decision of *Geraci v. Consolidated Rail Corp.*, No. 94–3942, 1995 WL 696735, 70 F.3d 1271 (6th Cir. Nov. 20, 1995), an unpublished opinion in which we held that the *Hood* test was replaced by the syllabus rule announced in *Matkovich*. That opinion does not bind us, *see United States v. Williams*, 15 F.3d 1356, 1362 n. 6 (6th Cir.1994) (en banc), and we decline to adopt its conclusion or reasoning.