*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0200P (6th Cir.)
File Name: 00a0200p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

ERIK CONTE,
　　　　*Plaintiff-Appellee,*

　　　　*v.*

GENERAL HOUSEWARES
CORPORATION,
　　　　*Defendant,*

DAYTON POWER & LIGHT
COMPANY,
　　　　*Defendant-Appellant.*



Nos. 98-4315;
99-4137

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 95-00451—Susan J. Dlott, District Judge.

Argued: March 16, 2000

Decided and Filed: June 14, 2000

Before: NORRIS, MOORE, and COLE, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Scott R. Thomas, FURNIER & THOMAS, Cincinnati, Ohio, for Appellant. Thomas R. Murphy, ROCHE, HEIFETZ, MURPHY & WHOLLEY, Boston, Massachusetts, for Appellee. **ON BRIEF:** Scott R. Thomas, Robert R. Furnier, Norman J. Frankowski II, FURNIER & THOMAS, Cincinnati, Ohio, for Appellant. Thomas R. Murphy, ROCHE, HEIFETZ, MURPHY & WHOLLEY, Boston, Massachusetts, Steven B. Ayers, CRABBE, BROWN, JONES, POTTS & SCHMIDT, Columbus, Ohio, for Appellee.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge. Plaintiff-appellee Erik Conte successfully sued defendant General Housewares Corp. ("GHC") and defendant-appellant Dayton Power and Light Co. ("DP&L") in connection with severe personal injuries that he received as a result of a large electrical shock and obtained a verdict of $3.5 million. DP&L now appeals several of the district court's rulings with respect to that verdict and with respect to the award of prejudgment interest against DP&L. Because there was no error in the district court's decisions to award prejudgment interest against DP&L and to deny DP&L's motions for judgment as a matter of law, a new trial, and relief from the award of prejudgment interest, we **AFFIRM** those rulings of the district court, and we **REMAND** for recalculation of DP&L's liability in light of the partial satisfaction of the judgment by GHC and the accrued postjudgment interest.

merely because its co-obligor settles with the plaintiff after the verdict. Although DP&L cites several cases that purportedly hold to the contrary, Conte is correct in pointing out that those cases either involved preverdict settlements or verdicts that legitimately apportioned damages among defendant tortfeasors. Those cases are therefore not apposite. For these reasons, we hold that the district court did not abuse its discretion in refusing to relieve DP&L from having to pay prejudgment interest on the entire judgment.

Additionally, DP&L claims that it is entitled to a reduction of the judgment against it based on GHC's settlement with Conte, in partial satisfaction of the judgment, for $3.675 million. Given our holding that DP&L is required to pay prejudgment interest, the parties do not appear to disagree about the amount for which DP&L remains liable: the entire judgment of $3.5 million, plus the prejudgment interest on that amount ($958,904.10), minus the $3.675 million paid by GHC, plus the appropriate postjudgment interest. Since we are remanding the case to the district court for the calculation of postjudgment interest, we suggest that the district judge amend the judgment to reflect the payment of $3.675 million by GHC and the revised amount of DP&L's liability, consistent with this opinion.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment and **REMAND** for recalculation of DP&L's liability in light of the accrued postjudgment interest and the partial satisfaction of the judgment by GHC.

## D.  Motion for Relief from the Judgment

Applying federal law, this court reviews for an abuse of discretion the district court's decision to grant or deny a Rule 60(b) motion in a diversity case.  *See Davis v. Jellico Community Hosp. Inc.*, 912 F.2d 129, 132-33 (6th Cir. 1990). DP&L contends that the district court abused its discretion in denying DP&L's motion for relief from the judgment under Federal Rule of Civil Procedure 60(b)(5) on the ground that the judgment has been partially satisfied.

First, DP&L argues that it should now be relieved of liability for the prejudgment interest, because, due to GHC's payment of the full amount of the underlying $3.5 million judgment, there is no longer a judgment on which prejudgment interest may be based.  Although neither party has cited published Ohio cases that are directly on point, as a matter of logic it is clear that a prejudgment interest award cannot be eradicated by a postjudgment settlement for the amount of the jury verdict, since the prejudgment interest was merged with the amount of the jury verdict to form the total judgment.  *See Nakoff v. Fairview Gen. Hosp.*, 694 N.E.2d 107, 108 (Ohio Ct. App.), *appeal not allowed*, 680 N.E.2d 1022 (Ohio 1997).  It would therefore be inaccurate to state that the judgment has been fully satisfied by GHC's payment of $3.675 million after the prejudgment interest was awarded against DP&L.[7]  Moreover, it is irrelevant for the purposes of prejudgment interest that the amount of the verdict is paid subsequent to the verdict, because prejudgment interest is intended to compensate the plaintiff for the delay between the time the cause of action arose and the verdict.  *See, e.g., Woods v. Farmers Ins. of Columbus, Inc.*, 666 N.E.2d 283, 286 (Ohio Ct. App. 1995).  Therefore, a defendant is not relieved of the requirement to pay prejudgment interest

---

[7]Indeed, DP&L's argument, carried to its logical conclusion, would appear to allow a party always to avoid paying prejudgment interest merely by paying the underlying judgment in full and then claiming that there was no longer a judgment on which to pay interest.

## I.  BACKGROUND

Erik Conte, an employee of Kessler Tank Co., was sent, along with two other Kessler employees, to paint an elevated water tank on the premises of General Housewares Corp. in Sidney, Ohio on June 10, 1995.  The water tank was surrounded by high-voltage electrical wires, some of which had been de-energized by a DP&L employee at the request of GHC.  Conte was severely injured when the extension pole he was using came into contact with one or more of the energized power lines, causing him to receive a large electrical shock.

The facts surrounding this accident were disputed.  It seems that GHC's maintenance manager, Don Doll, contacted Dayton Power & Light to inquire about having some power lines de-energized in preparation for the painting.  The DP&L employees who initially inspected the GHC site recommended a total power outage, but a GHC representative told Mike Nowicki, a supervisor at DP&L, that GHC was not willing to undergo a total outage, because it needed to have enough power to run the computers and other devices in its factory building.  All the parties agree on these facts, but they do not agree on what happened next.  There was conflicting testimony at trial concerning which power lines were to be left energized and who made that decision.  Ultimately, Mike Large, a technician from DP&L, appeared at GHC on June 10, 1995, and de-energized only those secondary wires attached to the legs of the water tank, leaving the primaries and the other secondaries energized.[1]  The Kessler employees proceeded to paint the tank and, while suspended from a botswain chair, Erik Conte accidentally allowed his sixteen-foot extension pole to make contact with one or more of the

---

[1]As explained by Nowicki, the difference between primary lines and secondary lines is that "primaries" are generally uninsulated and carry between 7200 and 12,500 volts of electricity, and "secondaries" are generally insulated and carry less than 600 volts.

primary lines, which caused him severe burns and disfigurement.

Conte filed suit against GHC and DP&L in federal court on November 29, 1995, for negligence, misrepresentation, and breach of contract.[2] He subsequently amended his complaint to omit the claims of misrepresentation and breach of contract against DP&L. The defendants moved for summary judgment. The magistrate judge recommended granting the summary judgment motions, finding in particular that Conte's injuries were not foreseeable by DP&L, since DP&L did not know that the Kessler workers would use a long extension pole to paint the tank; furthermore, the magistrate judge found that DP&L exercised ordinary care in de-energizing the power lines. The district court denied the summary judgment motions, however, finding instead that there were material questions of fact as to who determined which lines were to be de-energized and whether the process of de-energizing was performed with due care. The case went to trial, and Conte received a $3.5 million verdict. On September 11, 1998, the district court granted Conte's motion for prejudgment interest in the amount of $958,904.10 against DP&L only, finding that DP&L had failed to negotiate in good faith with Conte. The jury had erred, however, by apportioning liability for the verdict between the defendants ($3 million to GHC and $500,000 to DP&L) where the defendants were jointly and severally liable under Ohio law. The district court, with the agreement of counsel for all sides, therefore amended the judgment on October 14, 1998, to reflect the joint and several liability of GHC and DP&L for $3.5 million and the prejudgment interest award against DP&L. DP&L then filed a motion to amend the amended judgment entry, requesting that it state that prejudgment interest against DP&L would be

---

[2]Since Conte is a citizen of Massachusetts, GHC is a Delaware corporation with its principal place of business in Ohio, DP&L is an Ohio corporation with its principal place of business in Ohio, and the amount in controversy was jurisdictionally adequate, the district court properly assumed jurisdiction under 28 U.S.C. § 1332.

attributable to the plaintiff, then joint and several liability would lie."). The jury was therefore not entitled to apportion the damages between the two tortfeasors. *See George B. Scrambling Co. v. Tennant Drug Co.*, 158 N.E. 282, 285-86 (Ohio Ct. App. 1927); *Cincinnati Traction Co. v. Cochran*, 153 N.E. 116, 116-17 (Ohio Ct. App. 1923). The jury's answers to the special interrogatories, which found both DP&L and GHC negligent and Conte not contributorily negligent — thereby invoking joint and several liability under Ohio law — are inconsistent with the general verdict, which apportioned fault between DP&L and GHC. Therefore, the district court was entitled under Rule 49(b) to enter the judgment in accordance with the interrogatory answers and notwithstanding the verdict.

DP&L argues that the interrogatory answers and the general verdict were consistent when construed in light of the district court's "proximate cause" charge, which instructed the jury that "[e]ach defendant must respond for only those losses and injuries which are the direct and proximate result of its negligent act." J.A. at 2239 (Jury Charge). This argument is without merit. The requirement of proximate causation does not eliminate joint and several liability: joint and several liability implies that the joint acts of both defendants proximately caused the plaintiff's injuries. *See* 18 OHIO JUR. 3d *Contribution, Indemnity, and Subrogation* §§ 83, 84 (1980). Therefore, under joint and several liability, both defendants are held responsible for all of the plaintiff's injuries, because their joint acts were the proximate cause of all of those injuries.

For these reasons, we hold that the district court correctly amended the judgment under Rule 49(b), and therefore that it did not abuse its discretion in refusing to grant the defendant's motion for a new trial on this basis.

interrogatory responses, finding that both DP&L and GHC were negligent and that Conte was not contributorily negligent, were not inconsistent with the "general verdict" forms, which found DP&L liable for $500,000 and GHC liable for $3 million. Therefore, it claims, the district court did not have the authority under Federal Rule of Civil Procedure 49(b) to correct the judgment entry. The district court found that the answers were inconsistent with the general verdict and declined to grant DP&L's motion for a new trial.

In a diversity case, federal law governs most issues surrounding the utilization of special interrogatories and the problem of inconsistent answers, including the effect of inconsistency between a general verdict and one or more special interrogatories. *See Jewell v. Holzer Hosp. Found., Inc.*, 899 F.2d 1507, 1510 (6th Cir. 1990). However, federal courts look to state law to determine whether a verdict is inconsistent. *See Tipton v. Michelin Tire Co.*, 101 F.3d 1145, 1148 n.4 (6th Cir. 1996).

DP&L's objection to the amended judgment is without merit. As the district court correctly found, DP&L and GHC were jointly and severally liable as a matter of Ohio law, because they were joint tortfeasors, and Conte was not contributorily negligent. *See* OHIO REV. CODE ANN. § 2315.19; *Eberly v. A-P Controls, Inc.*, 572 N.E.2d 633, 638-39 (Ohio 1991) ("[S]everal liability [is] triggered only upon a finding of negligence on the part of the plaintiff. . . . If a jury return[s] answers to interrogatories finding no negligence

---

more issues of fact the decision of which is necessary to a verdict. . . . When the answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial.
FED. R. CIV. P. 49(b).

calculated only after contribution rights between DP&L and GHC had been determined, or, alternatively, that the prejudgment interest award against DP&L be calculated only on the amount of $500,000. The district court then denied the motion to amend the amended judgment, and DP&L appealed.

Meanwhile, on September 28, 1998, GHC settled with Conte for $3.675 million. DP&L therefore filed a motion pursuant to Federal Rule of Civil Procedure 60(b)(5) for relief from the judgment to the extent of the settlement amount. The district court denied the order as superfluous. DP&L then appealed that order.

On appeal, DP&L makes several claims of error. First, it argues that the district court abused its discretion in granting prejudgment interest to Conte. It also claims that the district court erred in denying DP&L's motion for judgment as a matter of law and abused its discretion in denying DP&L's motion for a new trial. Finally, DP&L contends that the district court's denial of DP&L's motion for relief from the judgment was in error.

## II. ANALYSIS

### A. Prejudgment Interest

In a diversity case, state law governs the district court's decision whether to award prejudgment interest, *see Diggs v. Pepsi-Cola Metro. Bottling Co.*, 861 F.2d 914, 924 (6th Cir. 1988), which is reviewed by this court for an abuse of discretion, *see Stallworth v. City of Cleveland*, 893 F.2d 830, 836 (6th Cir. 1990) (applying Ohio law). The Ohio courts have defined an abuse of discretion, in the context of prejudgment interest awards, as a result "so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *State v. Jenkins*, 473 N.E.2d 264, 313 (Ohio 1984) (quoting *Spalding v. Spalding*, 94 N.W.2d

810, 811-12 (Mich. 1959)), *cert. denied*, 473 U.S. 1032 (1985).

Under Ohio law, a plaintiff is entitled to prejudgment interest if the court determines "that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case." OHIO REV. CODE ANN. § 1343.03(C) (Banks-Baldwin 1994). The Ohio Supreme Court has held that a party has not failed to make a good-faith effort to settle under the statute if that party has

(1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer.

*Kalain v. Smith*, 495 N.E.2d 572 (Ohio 1986), syllabus. In *Moskovitz v. Mt. Sinai Medical Center*, 635 N.E.2d 331 (Ohio), *cert. denied*, 513 U.S. 1059 (1994), the Supreme Court of Ohio noted that the last sentence "should be strictly construed so as to carry out the purposes of R.C. 1343.03(C)." *Id.* at 348. Although the burden of proof is on the party seeking the prejudgment interest, that burden does not require showing bad faith by the other party, but rather only a lack of good faith. *See id.*

The district court held that DP&L failed to make a good-faith effort to settle, because it did not rationally evaluate its risks and potential liability, nor did it make a good-faith settlement offer or respond in good faith to Conte's offer. DP&L claims that the district court abused its discretion, because DP&L maintained a good-faith, reasonable belief that it was not liable for Conte's injuries throughout this litigation. DP&L points first to the magistrate judge's recommendation

used to impeach Fralick's testimony at trial that he did not know that the primaries were energized.

Applying federal law to determine the admissibility of Doll's testimony, we conclude that the evidence was erroneously excluded. *See Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000). Because the statements were offered to impeach Fralick's trial testimony and not for the truth of the matter asserted, they were not hearsay. *See* FED. R. EVID. 801(c); *United States v. Causey*, 834 F.2d 1277, 1282-83 (6th Cir. 1987), *cert. denied*, 486 U.S. 1034 (1988). Nonetheless, DP&L has made no showing that this error was so prejudicial as to require a new trial. As Conte pointed out, Large testified that he told Fralick that the lines were hot; therefore, some evidence to this effect was before the jury. DP&L argues that this evidence would have helped to illuminate the question of the painters' reliance on DP&L's undertaking to make their workplace safe: if the jury concluded that painters knew the lines were energized, then they could not have found that the painters relied on DP&L's conduct in using the extension poles in the proximity of the primary wires. This argument has two flaws. First, Doll's testimony would not, in any case, have been admissible as substantive evidence on this issue, but merely as a way of impeaching Fralick's testimony. Second, the proffered evidence may help to show that Fralick did not rely on DP&L, but it does not demonstrate anything about Conte's reliance. Therefore, we hold that the district court did not abuse its discretion in refusing to grant a new trial based on the erroneous exclusion of this evidence.

Finally, DP&L argues that it was entitled to a new trial because it was prejudiced by the district court's erroneous amendment of the judgment under Federal Rule of Civil Procedure 49(b).[6] DP&L claimed that the jury's special

---

[6]Rule 49(b) states, in pertinent part:
The court may submit to the jury, together with the appropriate forms for a general verdict, written interrogatories upon one or

*Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 & n.20 (6th Cir. 1991). Finding an abuse of discretion in this context requires a "definite and firm conviction . . . that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Holmes v. City of Massillon*, 78 F.3d 1041, 1045 (6th Cir.) (quoting *Balani v. INS*, 669 F.2d 1157, 1160 (6th Cir. 1982)), *cert. denied*, 519 U.S. 935 (1996). Generally, a court may grant a new trial under Rule 59 if the verdict is against the weight of the evidence, if the damages award is excessive, or if the trial was influenced by prejudice or bias, or otherwise unfair to the moving party. *See id.* at 1045-46. When ruling on a new trial motion claiming that the verdict was against the weight of the evidence, the district court "may compare the opposing proofs and weigh the evidence." *Toth v. Yoder Co.*, 749 F.2d 1190, 1197 (6th Cir. 1984). However, "while the district judge has a duty to intervene in appropriate cases, the jury's verdict should be accepted if it is one which could reasonably have been reached." *Id.* (quoting *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied*, 459 U.S. 1171 (1983)).

In arguing that the verdict was against the weight of the evidence, DP&L relies on the same arguments that it employed in contending that the district court should have granted its motion for judgment as a matter of law. For the reasons discussed above in Part B.2., we hold that the jury's verdict in this case is one that could reasonably have been reached, and therefore that the district court did not err in denying DP&L's motion for a new trial on this ground.

DP&L also argues that the district court should have granted it a new trial, because it was prejudiced by the erroneous exclusion of certain evidence. In particular, DP&L attempted to have Don Doll testify that Stan Fralick (one of the Kessler painters) told Doll after the accident that he knew "the wires were hot, but not that hot." The district court refused to admit this testimony as hearsay. DP&L argues that this testimony was admissible under Federal Rule of Evidence 613(b) as extrinsic evidence of a prior inconsistent statement,

to grant summary judgment in DP&L's favor as evidence of the reasonableness of DP&L's belief in its own lack of liability. Furthermore, DP&L claims that, contrary to the district court's findings, DP&L personnel constantly discussed the possibility and desirability of settlement with DP&L's counsel. Finally, DP&L disputes the district court's finding that DP&L believed there was more than a fifty percent chance that a jury would award Conte a verdict of up to $500,000, which was based on the statement of DP&L's counsel that he thought that "[t]he likelihood of Plaintiff recovering an award in excess of $500,000.00 from DP&L [was] less than 50%." J.A. at 2505 (Thomas Dep.).

We hold that the district court did not abuse its discretion in awarding prejudgment interest to Conte. DP&L does not dispute that it never made a real settlement offer to Conte, despite Conte's efforts to negotiate.[3] Furthermore, although there is evidence that DP&L's counsel, Scott Thomas, made some attempts to evaluate DP&L's potential liability in this action and that he kept in contact with DP&L management about the possibility of settlement, the district court did not abuse its discretion in finding that DP&L nonetheless did not rationally evaluate its risk. Thomas's deposition indicates that there was only one written report generated by the law firm and transmitted to DP&L regarding the possibility of settlement in this case. Similarly, Paul Cynkar, the Supervisor of Claims Administration at DP&L, testified that DP&L did not make any written evaluations of the case based on Thomas's oral communications. Thomas's testimony also demonstrates minimal and unrigorous efforts on his part to

---

[3]The only act on the part of DP&L that could be characterized as a "settlement" was its offer of $3.00 to Conte on the day prior to trial. As DP&L explains, however, this "offer" was part of a scheme to convince Conte to dismiss DP&L from the case: DP&L explained to Conte that it would be to Conte's advantage to have DP&L out of the case for a number of reasons – including that DP&L intended to employ "kamikaze" and "scorched earth" tactics and that DP&L was more prepared than GHC and would bolster GHC's defense.

determine the likely verdict in this case. *Cf. Loder v. Burger*, 681 N.E.2d 1357, 1362-63 (Ohio Ct. App. 1996) (noting that a claims adjuster's decision to rely solely on her own judgment as to the value of the case, without seeking outside opinions, was some evidence of a failure rationally to evaluate risk). Given this evidence, we cannot conclude that the district court's decision was so unreasonable, illogical, or arbitrary as to constitute an abuse of discretion.

DP&L maintains that it reasonably believed throughout the litigation that it could not be held liable, because it had never undertaken a duty to de-energize the primary lines, and because it did not own those lines and therefore was not authorized to de-energize them unless GHC so instructed it. Those defenses were simply no longer valid, however, in light of the district court's rulings, in denying DP&L's motion for summary judgment, that DP&L had undertaken a duty (the scope of which was unclear), that there was an issue of fact as to who had decided which lines would be de-energized, and that DP&L's lack of ownership of the power lines was not dispositive. Therefore, DP&L could not maintain a reasonable belief in its own nonliability on the theory it describes. *See id.* at 1361 (holding that the defendants' reliance on "faulty defenses" could not constitute a good faith, objectively reasonable belief that they were not liable).

Furthermore, DP&L's argument that it could have had a reasonable belief that it was not liable because the factual issues were strongly disputed, *see Cooper v. Metal Sales Manufacturing Corp.*, 660 N.E.2d 1245, 1255-56 (Ohio Ct. App.), *appeal not allowed*, 655 N.E.2d 741 (Ohio 1995); *Worrell v. Multipress, Inc.*, 543 N.E.2d 1277, 1285 (Ohio 1989), does not carry the day. The courts in *Worrell* and *Cooper* merely held that the trial court did *not* abuse its discretion in *refusing* prejudgment interest where the factual issues were hotly disputed; they did not hold that it was an abuse of discretion to grant prejudgment interest in those situations. *See Cooper*, 660 N.E.2d at 1255-56; *Worrell*, 543 N.E.2d at 1285. Moreover, the Ohio Supreme Court has also

could find that DP&L owed a duty to Conte, regardless of the fact that DP&L did not own the power lines or have the right to de-energize them without GHC's permission.

Having determined that DP&L did owe a duty to Conte, we have no difficulty in concluding that the jury could reasonably find that that duty included de-energizing the primary wires, and that DP&L exhibited negligence with respect to that duty. Based on the testimony of Nowicki, Large, and William Hershfeld, a maintenance supervisor at GHC, the jury could have concluded that DP&L had explicitly agreed to de-energize the primary lines; or it could have found that DP&L agreed to de-energize those lines that had to be de-energized in order to render the workplace safe; or it could have found that DP&L undertook together with GHC to decide which lines should be de-energized. If it found any of those duties to be included within the scope of DP&L's undertaking, the jury clearly could have found that DP&L performed negligently by only de-energizing — or by only agreeing to de-energize — the secondary lines attached to the legs of the tank. Therefore, the district court did not err in denying DP&L's motion for judgment as a matter of law.

## C.  Motion for a New Trial

DP&L claims that the district court should have granted its motion for a new trial under Federal Rule of Civil Procedure 59. DP&L contends that it was entitled to a new trial for three reasons: first, the verdict was contrary to the weight of the evidence; second, the district court erred in excluding some of DP&L's evidence as hearsay; and third, the district court incorrectly modified the jury's verdict under Federal Rule of Civil Procedure 49(b). All of these claims are without merit.

In a diversity case, federal law governs the district court's decision whether to grant a new trial on the basis of the weight of the evidence, which is reviewed by this court for an abuse of discretion. *See J.C. Wyckoff & Assocs., Inc. v.*

to its customer to exercise reasonable care when it elected to respond to a customer's call for emergency assistance").[5]

It is undisputed in this case that DP&L undertook to aid GHC in making its workplace safe, and it is undisputed that Conte relied on the joint actions of GHC and DP&L when performing his job of painting the water tower. In order to show reliance under § 323(b), the Ohio Court of Appeals has held, the plaintiff must show "actual or affirmative reliance, *i.e.*, reliance 'based on specific actions or representations which cause the persons to forego other alternatives of protecting themselves.'" *Wissel*, 605 N.E.2d at 465 (citation omitted). The fact that the Kessler employees waited for the DP&L worker to de-energize the power lines before beginning their work serves as evidence that they relied on DP&L's and GHC's efforts to render the workplace safe and that they would not have begun painting if they believed that there was a possibility of electrical shock. Exactly what DP&L undertook to do to render the GHC workplace safe is less clear, however; but the scope of the duty undertaken by DP&L was for the jury to determine. *See Peyer v. Ohio Water Serv. Co.*, 720 N.E.2d 195, 200 (Ohio Ct. App. 1998); *Detrick v. Columbia Sussex Corp.*, 629 N.E.2d 1081, 1082 (Ohio Ct. App. 1993).

Furthermore, the fact that DP&L did not own or exercise control over GHC's power lines does not affect the existence of DP&L's duty. A utility may still owe a duty to guard the safety of customers and others, regardless of who actually owns or controls the power lines. *See Fortman v. Dayton Power & Light Co.*, 609 N.E.2d 1296, 1299-1300 (Ohio Ct. App. 1992). Therefore, if the jury found that DP&L had undertaken a duty to make GHC's workplace safe by de-energizing the primaries as well as certain secondaries, it

---

[5]The *Wissel* court noted that the Ohio Supreme Court had not expressly adopted § 323, but that it had cited that section with approval. *See Wissel*, 605 N.E.2d at 465. The Ohio Supreme Court still has not spoken definitively on § 323(b) since *Wissel* was decided.

stated that conflicting evidence can be a factor weighing in favor of a grant of prejudgment interest. *See Moskovitz*, 635 N.E.2d at 351-352. Thus, the mere existence of factual conflicts is of little aid to DP&L's case.

DP&L is correct that the magistrate judge's recommendation in its favor is some evidence that DP&L could have had a reasonable, good-faith belief that it was not liable. However, DP&L was not entitled to rely on this initial belief throughout the litigation, especially since subsequent events should have undermined that belief. *Cf. id.* at 351 ("If [the defendant] ever had a good faith, objectively reasonable belief that he had no liability, the fact that the 'arbitration' panel unanimously found against [him] should have apprised him that a finding of liability at trial was possible, if not probable."). In the cases cited by DP&L for the proposition that the magistrate judge's recommendation demonstrates its good faith, there were no subsequent events that undermined the defendant's belief in its lack of liability, and therefore those cases are inapposite.[4]

DP&L is also correct that, as a matter of logic, its counsel's statement that he believed that there was less than a fifty percent chance that DP&L would be held liable for more than $500,000 does not mean that he therefore believed that there was more than a fifty percent chance that it would be held liable for an amount up to $500,000. Nonetheless, in light of the substantial evidence supporting the district court's decision, this minor error in the court's argumentation is not

---

[4]One exception is the unpublished case *Barna v. Randall Park Associates*, No. 66751, 1994 WL 716525 (Ohio Ct. App. Dec. 22, 1994), *dismissed, appeal not allowed*, 648 N.E.2d 514 (Ohio 1995), cited by DP&L, in which the court held that, in a second trial, the defendant had a good-faith belief that it was not liable based, in part, on a directed verdict in its favor in the first trial, despite the fact that that verdict was overturned on appeal. However, the court of appeals noted that there were compelling reasons for the defendant to believe that it could prevail in the new trial, because it had located new witnesses and therefore could present a new theory of nonliability. *See id.* at *2.

sufficient to demonstrate an abuse of discretion.  We therefore uphold the award of prejudgment interest to Conte.

## B.  DP&L's Motion for Judgment as a Matter of Law

### 1.  Standard of Review

This court reviews de novo the district court's disposition of a motion for a judgment as a matter of law under Federal Rule of Civil Procedure 50.  *See K&T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175 (6th Cir. 1996).  To the extent that DP&L claims that the district court erred in finding that DP&L had assumed a duty of care, it raises a purely legal question, *see Mussivand v. David*, 544 N.E.2d 265, 270 (Ohio 1989), which is also reviewed de novo by this court, *see Hostetler v. Consolidated Rail Corp.*, 123 F.3d 387, 390 (6th Cir. 1997).  However, DP&L also argues that the jury could not have found, based on the evidence presented at trial, that it assumed a specific duty to de-energize the primary lines or that it failed to de-energize the secondary lines with reasonable care.  This court has held that the district court — and this court in its de novo review — must apply state-law standards to determine whether the evidence was sufficient to support the jury's verdict.  *See K&T Enters.*, 97 F.3d at 176.  Therefore, this court, like the district court, construes the evidence most strongly in favor of the non-movant; if there is substantial evidence supporting the jury verdict, about which reasonable minds may disagree, the motion is properly denied.  *See Hostetler*, 123 F.3d at 390; *see also Cardinal v. Family Foot Care Ctrs., Inc.*, 532 N.E.2d 162, 164 (Ohio Ct. App. 1987); OHIO CIV. R. 50(A)(4).  Under Ohio law, the credibility of the witnesses and the weight of the evidence are not to be considered when ruling on such a motion.  *See Cardinal*, 532 N.E.2d at 164.

### 2.  Appropriateness of the District Court's Denial of the Motions

To make out a claim for negligence, a plaintiff must show the existence of a duty.  *See Estates of Morgan v. Fairfield*

*Family Counseling Ctr.*, 673 N.E.2d 1311, 1319 (Ohio 1997).  "In Ohio, '[t]he existence of a duty depends on the foreseeability of the injury . . . . The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act.'"  *Id.* (quoting *Menifee v. Ohio Welding Prods., Inc.*, 472 N.E.2d 707, 710 (Ohio 1984)) (omission and alteration in original).

The district court was correct to find that DP&L owed a duty of ordinary care to Conte, because DP&L voluntarily undertook to perform services for the benefit of Conte and the other Kessler painters.  The Court of Appeals of Ohio adopted the position of the Restatement (Second) of Torts § 323 in *Wissel v. Ohio High School Athletic Association*, 605 N.E.2d 458 (Ohio Ct. App. 1992).  That section states as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> . . .
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 323 (1965); *see Wissel*, 605 N.E.2d at 464-65; *see also Best v. Energized Substation Serv., Inc.*, 623 N.E.2d 158, 162 (Ohio Ct. App. 1993) ("When one voluntarily assumes a duty to perform, and another reasonably relies on that assumption, the act must be performed with ordinary care."); *Smith v. Cincinnati Gas & Elec. Co.*, 600 N.E.2d 325, 327 (Ohio Ct. App. 1991) (holding that the defendant utility "assume[d] a general duty