NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0460n.06
Filed: June 3, 2005

Case No. 03-2193

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **JOSEPH LINCE, JR.,** | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| **v.** | ) | **COURT FOR THE WESTERN** |
| | ) | **DISTRICT OF MICHIGAN** |
| **PETE YOUNGERT,** | ) | |
| | ) | |
| **Defendant-Appellee.** | ) | |

BEFORE:    KENNEDY and COOK, Circuit Judges; and VARLAN, District Judge[1]

VARLAN, District Judge.  Plaintiff-appellant Joseph Lince, Jr. is incarcerated at the Ionia Correctional Facility, the only Level VI (maximum security) prison in Michigan. Lince claims that on March 25, 2000, while he was chained to the top of a bed, he was brutally assaulted by defendant-appellee Pete Youngert, a prison guard.  Lince sued Youngert pursuant to 42 U.S.C. § 1983 for violation of his Eighth Amendment right to be free from cruel and unusual punishment and for assault and battery under Michigan law.  Following a two-day bench trial at which Lince acted *pro se*, the district court entered a judgment for Youngert.

---

[1]The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

On appeal, Lince argues that (1) the district court abused its discretion by refusing to appoint counsel to assist him; (2) a new trial is warranted where one of the district court's key findings of fact is contradicted by undisputed testimony; and (3) the district court erroneously required corroborating evidence of Lince's physical injuries. For the reasons that follow, we **AFFIRM** the judgment of the district court.

I.

In the afternoon of March 25, 2000, Lince was kicking his cell door and slamming the door of his footlocker. He was ordered to cease this conduct and he admittedly did not. A response team of officers, including Youngert, came to his cell to place him in soft restraints. Lince threw a cup of liquid, which he claims was water, through an opening in the cell door and it splashed on Youngert. After another team of officers arrived, Lince then charged out his cell door, striking one of the officers. Lince was tackled by several officers. While he states that his leg was injured during this process, that injury is not part of his claim here.

As a result of this behavior, Lince was placed in a cell in "top of bed" ("TOB") restraints.[2] While he was in TOB restraints, Lince claims that Youngert entered his cell, placed a plastic bag over Lince's face, and then began to punch him repeatedly in the stomach and testicles. Lince claims this assault took place between 5:45 p.m. and 6:58 p.m. Lince claims he suffered bruises and swelling in his groin and stomach area. Youngert denies that he entered Lince's cell that evening or that he harmed Lince in any way.

_____

[2]A TOB restraint means the prisoner's arms, legs, and torso are chained to the bed.

According to Lince's medical records, Officer Cowley and Nurse Monica Gardner made a routine visit to Lince's cell to check his TOB status at 6:58 p.m. Lince claims he told Officer Cowley and Nurse Gardner about the assault, specifically that he said, "How can you let this guy come in here and do this to me?" (J.A. at 616.) Officer Cowley acknowledged at trial that Lince did ask, "Why did you allow this to happen," or "Why did you let him assault me?" (J.A. at 675.) Nurse Gardner does not have any independent recollection of the events of March 25, 2000, and her medical notes only indicate that Lince "complains of injuries after use of force earlier this afternoon" and that he complained of "old motorcycle injuries hurting left leg." (J.A. at 821.) Plaintiff admittedly did not ask the nurse to look at his stomach or his groin. The records further indicate that the nurse examined the plaintiff's left leg and noticed purple discoloration and swelling to his knee and ankle. Nurse Gardner testified that if Lince had complained about being beaten, she would have recorded that in her notes.

Six inmates testified at the trial and they all agreed that Youngert entered Lince's cell and assaulted him. Their stories varied only slightly and several claimed that Youngert spoke to them after the assault in an attempt to explain his actions and/or to warn them to be quiet. Five corrections officers testified at the trial and they all agreed that they did not let Youngert into Lince's cell, they did not see anyone else do so, and they heard no commotion from the inmates during or after the alleged assault.

On March 28, 2000, Lince filed a grievance regarding the assault. For unexplained reasons, the grievance was not immediately investigated. Lince also wrote a letter to his

3

father complaining of the assault. Lince's father complained to the warden who subsequently responded in writing that the incident had not occurred.

## II.

Plaintiff initiated this action *pro se* on November 8, 2000, in the United States District Court for the Western District of Michigan, seeking recovery under 42 U.S.C. §§ 1983, 1985 for violations of the First, Eighth, and Fourteenth Amendments to the Constitution. Plaintiff's claims against all defendants except Youngert were dismissed before trial. Lince's amended complaint asserted claims of cruel and unusual punishment in violation of the Eighth Amendment and for assault and battery under Michigan state law. Plaintiff moved for appointment of counsel on January 22, 2001, December 18, 2001, and January 28, 2003. The district court denied each of these requests.

The district court conducted a bench trial of the case on July 28-29, 2003. At the conclusion of the trial, the district judge issued findings of fact and conclusions of law and entered judgment for the defendant. Lince filed a motion for new trial which was denied on October 10, 2003. Lince filed a timely notice of appeal from the district court's judgment and then an amended notice of appeal from the denial of his motion for new trial.

4

III.

This court reviews a district court's order denying appointment of counsel to a civil litigant for an abuse of discretion. *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). The plaintiff argues that the district court abused its discretion in denying his three requests for appointment of counsel.

Although there is no constitutional right to counsel in a civil case, *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003), the district court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). "The appointment of counsel to civil litigants is a decision left to the sound discretion of the district court, and this decision will be overturned only when the denial of counsel results in 'fundamental unfairness impinging on due process rights.'" *Lavado*, 992 F.2d at 604-605 (citing *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992)). Appointment of counsel is appropriate in "exceptional circumstances," a determination which involves consideration of the "complexity of the factual and legal issues involved" and an examination of "the type of case and the abilities of the plaintiff to represent himself." *Id.* at 606.

In support of his "exceptional circumstances" argument, Lince contends that counsel should have been appointed because he presented a colorable claim, as evidenced by his survival of two motions for summary judgment, and because of his limited ability to identify witnesses and obtain legal research materials due to his incarceration. Lince also argues that appointment of counsel was appropriate because his case involved conflicting testimony, thus

5

placing importance on the credibility of witnesses. Finally, Lince argues that his limited education and lack of litigation experience weigh in favor of appointment of counsel.

However, as the defendant argues, this case presented a sole issue for trial: whether plaintiff was assaulted by the defendant as alleged or not. Prior to announcing his findings of fact and conclusions of law, the district judge stated, "...let me begin by commending the plaintiff for the excellent presentation that he has made here today, particularly for one that is untrained as a lawyer." (J.A. at 802.) The district judge further found, upon review of plaintiff's motion for new trial:

> Representing himself, plaintiff was afforded a fair and ample opportunity to present his case in a two-day bench trial. Despite his lack of formal training, he showed himself to be an able, well-prepared advocate. He marshalled and presented his evidence in an orderly, intelligent fashion. He cross-examined defendant's witnesses courteously and effectively.

(J.A. at 514.)

The record confirms the district court's assessment of plaintiff's abilities. Plaintiff presented numerous witnesses through appropriate direct examination questions; he presented exhibits; he conducted cross examinations of the defendant's witnesses by using leading questions; and he even made appropriate evidentiary objections. The record further reveals that the district judge explained the procedures and the rationales for his rulings to the plaintiff throughout the proceedings. While a skilled attorney undoubtedly would have handled certain aspects of the trial differently or perhaps more skillfully revealed the possible prejudices of the defendant's witnesses, the essence of the case would still have hinged on the district court's assessment of the credibility of all the witnesses. Inasmuch as the district

6

court concluded that neither the inmate witnesses nor the officer witnesses were particularly credible, there is no basis to conclude that the assistance of counsel for the plaintiff would have materially altered the outcome. The record does not reflect that the district court's denial of counsel caused the plaintiff "fundamental unfairness impinging on due process rights." *Lavado*, 992 F.2d at 604-605.

IV.

This court reviews a district court's findings of fact under the clearly erroneous standard. *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 341 (6th Cir. 1997); *Thurman v. Yellow Freight Sys.*, 90 F.3d 1160, 1166 (6th Cir. 1996); Fed. R. Civ. P. 52(a). A finding of fact is clearly erroneous when "the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Kline*, 128 F.3d at 341 (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573-75 (1985)).

The decision whether to grant a new trial under Fed. R. Civ. P. 59 is reviewed for an abuse of discretion. *Conte v. General Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000). An abuse of discretion therefore requires a "definite and firm conviction ... that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Id.* An error, defect or other act must affect the substantial rights of the parties to constitute proper grounds for granting a new trial. *Walker v. Bain*, 257 F.3d 660, 670 (6th Cir. 2001); Fed. R. Civ. P. 61.

The district court's conclusion that Lince did not prove by a preponderance of the evidence that he was assaulted by Youngert was founded primarily on the credibility of

Nurse Gardner and the lack of evidence corroborating plaintiff's alleged physical injuries. In reaching this conclusion, the district court recited uncontested and contested facts, including the following contested fact:

> The plaintiff also claims that he asked Officer Cowley how he could let the defendant do that to him. Officer Cowley denies this part of a conversation with the plaintiff occurred.

(J.A. at 808.) This finding is incorrect inasmuch as Officer Cowley did testify that plaintiff stated, "Why did you allow this to happen," or "Why did you let him assault me?" when Officer Cowley and Nurse Gardner came to his cell following the alleged assault. (J.A. at 675.) The plaintiff ties the district court's misstatement to another finding in which the district court noted the only "arguable corroboration" of plaintiff's claims was a subsequent memorandum by Officer Cowley during the grievance investigation in which Officer Cowley stated, "It was at this time that Lince made the same accusations that he did in his grievance." (J.A. at 813-814.) The district court concluded the memorandum was "largely unexplained." (J.A. at 814.)

The plaintiff argues that a new trial is appropriate for the finder of fact to correctly weigh Officer Cowley's testimony, combined with his memorandum, and Nurse Gardner's testimony and the medical record. Plaintiff suggests that Officer Cowley's testimony demonstrates that Nurse Gardner has a credibility problem. The defendant notes that the district court found the testimony of both the inmates and the corrections officers to be unconvincing. Moreover, the defendant points out that the district court emphasized the "deciding factors" in its judgment as Nurse Gardner's credibility and the lack of

8

corroboration of plaintiff's physical injuries which suggests that plaintiff's testimony was not credible.

While the district court misstated Officer Cowley's testimony, the error was harmless to the ultimate outcome. Officer Cowley's testimony only corroborates plaintiff's claim that he complained about the beating at the time he was examined by Nurse Gardner. It would not, however, affect the district court's assessment of Nurse Gardner's credibility inasmuch as she admitted no independent recollection of the events. It further does not alter the undisputed fact that plaintiff never sought treatment for his alleged injuries or showed his injuries to anyone. Officer Cowley's testimony, if properly attributed, does not warrant the conclusion that the district court's judgment was against the great weight of the evidence or affected the substantial rights of the plaintiff. Thus, we are not left with a definite and firm conviction that the district court committed a clear error in judgment and the denial of plaintiff's motion for a new trial was appropriate.

V.

A legal determination by a district court is reviewed by this court *de novo*. *Davies v. Centennial Life Ins. Co.*, 128 F.3d 934, 938 (6th Cir. 1997). It is well settled that the unjustified infliction of bodily harm upon a prisoner by a correctional officer gives rise to liability under § 1983.[3] *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992). As set forth

---

[3]42 U.S.C. § 1983 provides a civil cause of action when a citizen is subjected "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of law.

by the Supreme Court in *Hudson v. McMillian*, 503 U.S. 1, 7 (1992), whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the key inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002); *Caldwell*, 968 F.2d at 599-600; *Haynes v. Marshall*, 887 F.2d 700, 703 (6th Cir. 1989). The parties and the district court agreed that, if plaintiff's version of events did occur, the assault would constitute an Eighth Amendment violation.

The plaintiff claims that the district court applied an erroneous legal standard by requiring him to present evidence of physical injury to prove an Eighth Amendment violation. This court has clearly held that a prisoner alleging an Eighth Amendment violation need not prove a "serious physical injury," but rather must show that the infliction of pain during the use of force was unnecessary and wanton. *McHenry v. Chadwick*, 896 F.2d 184, 187 (6th Cir. 1990). Plaintiff's argument rests on the district court's conclusion that the assault did not occur, in part, because plaintiff did not present any corroborating evidence of physical injury.

The defendant argues that no legal error occurred. Rather than requiring plaintiff to show a physical injury in order to prove a constitutional violation, the district court made a factual finding that Lince was not injured. In other words, the absence of any corroborating evidence of Lince's claimed physical injuries casts doubt as to the veracity of his claim and his credibility. The defendant also points out that, if the plaintiff had been assaulted by a 250-pound officer while in full body restraints and beaten repeatedly as he claimed, the

10

injuries would have been readily apparent to Nurse Gardner who spent 10-15 minutes in his cell after the alleged attack.

We agree with the defendant. The district court's opinion reveals that the case boiled down to credibility. The district court used the lack of evidence corroborating plaintiff's claimed physical injuries to weigh against the plaintiff's credibility. As defendant argues, if such an assault occurred, the plaintiff's injuries would have been apparent to Nurse Gardner and anyone else who observed the plaintiff. The district court did not erroneously require evidence of physical injuries as an element of proof.

The plaintiff also contends that the requirement of corroborating evidence was erroneous because plaintiff's attempts to have his claim investigated were thwarted by prison officials, referencing the delay in investigating his grievance. Plaintiff further complains that he had limited means to discover and preserve evidence and testimony corroborating his physical injuries, harkening back to plaintiff's argument on the lack of appointed counsel.

The record reveals that the investigation of plaintiff's grievance was indeed delayed, but it did occur. The delay in investigating his grievance does not, however, relieve plaintiff of his burden to prove his claim. Plaintiff has provided no explanation for why he did not seek medical treatment because of his alleged injuries or show his injuries to another inmate, a corrections officer, or one of the other nurses who made rounds twice daily. The district court's consideration of this lack of evidence was not erroneous.

VI.

For all the reasons discussed above, we **AFFIRM**.

11