**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0772n.06
Filed: September 1, 2005

Nos. 04-5349, 04-5504

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

RAY W. METTETAL, JR.,                            )
                                                 )
      **Plaintiff-Appellant,**             )
                                                 )
v.                                               )
                                                 )
VANDERBILT UNIVERSITY, Legal                     )
Department; EDNA SUE PULLY;                       )
JENNIFER D.K. WEST; DONNIE                        )
YOUNG; JOHN JACKSON; JAMES                        )
CAMPBELL; ALLEN R. GUYET;                         )
METROPOLITAN GOVERNMENT                           )
OF NASHVILLE AND DAVIDSON                         )
COUNTY, TENNESSEE; THOMAS                         )
BURKE; BRAD PUTNAM; DAVID                         )   **ON APPEAL** FROM THE
MILLER; J. STEPHEN DICKEY;                        )   UNITED STATES DISTRICT
DAVID DIXON; HARRISONBURG                         )   COURT FOR THE MIDDLE
POLICE DEPARTMENT; D. W.                          )   DISTRICT OF TENNESSEE
COX; TOM D. HOOVER; W. H.                         )
FRANK; S. ANTOINE; W. H.                          )
HOLLOWAY; KENNETH                                 )   **O P I N I O N**
HUTTON;  L.  M.  MILLER;                          )
THOMAS                                           )
JACOBS; HILLIARD HESTER;                          )
THOMAS THURMAN; LISA                              )
NAYLOR; RAY B. FITZGERALD,                        )
JR.; JOHN BURNS EARLE, III, et                    )
al.; MARSHA GARST; ANN                            )
KELLEHER; DREW                                    )
RICHARDSON; JAMES P.                              )
BURANS; JOHN F. HEWETSON;                         )
JENNIFER HAGER; DIRECTOR                          )
BUREAU OF PRISONS; PATRICK                        )
T. MCNALLY; UNKNOWN JAIL                          )
EMPLOYEES; GAYLE RAY,                             )
Sheriff; GRAY, Officer; OFFICERS                  )
OF VANDERBILT UNIVERSITY;                         )
UNKNOWN METRO PD
DETECTIVES; DON AARON;

2

STEPHEN J. DEWALT; JOSEPH M. )
BROOKS; JAMES H. MICHAEL, )
JR.; JANET CLARK; RICARDO )
BRADFORD; METROPOLITAN )
WASHINGTON AIRPORT )
AUTHORITY POLICE )
DEPARTMENT, )
                                                        )
        **Defendants-Appellees.** )
_____)

**Before: MOORE and COOK, Circuit Judges, and GWIN[*], District Judge.**

**KAREN NELSON MOORE, Circuit Judge.** Plaintiff-Appellant Ray W. Mettetal, Jr. ("Mettetal"), proceeding *pro se*, appeals the district court's orders dismissing the underlying civil rights action against various defendants. Mettetal's suit raises a variety of claims based on Mettetal's 1995 arrest on the Vanderbilt University campus; his subsequent prosecution in the U.S. District Court for the Western District of Virginia on charges of possession of false identification documents in violation of 18 U.S.C. § 1028(a)(3) and possession of a toxin in violation of 18 U.S.C. § 175; and the eventual reversal of his convictions based on a determination by the U.S. Court of Appeals for the Fourth Circuit that Mettetal was unlawfully arrested and that the evidence used to convict him was the fruit of that unlawful arrest. For the reasons set forth below, we **AFFIRM IN PART**, **REVERSE IN PART, VACATE IN PART**, and **REMAND** for further proceedings.

---

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Factual History

In considering Mettetal's motion to set aside his conviction, the U.S. Court of Appeals for the Fourth Circuit in *United States v. Mettetal*, No. 99-4013, 2000 WL 530330 (4th Cir. May 3, 2000) ("*Mettetal I*"), summarized the facts underlying this suit as follows:

> Mettetal was arrested while walking along a sidewalk on the campus of Vanderbilt University on August 22, 1995. It appears that Mettetal's presence on the campus that day had something to do with a man against whom he held a longstanding grudge. That man was Dr. George Allen, Chairman of the Neurosurgery Department at the Vanderbilt University Medical Center. Almost a dozen years earlier, Mettetal, who is a physician, started a residency in neurosurgery at Vanderbilt under the direction of Dr. Allen. When Dr. Allen suggested that Mettetal's progress at the end of his first year was not quite up to par, Mettetal abruptly resigned from the program. Although Mettetal eventually finished a residency in neurology at Vanderbilt, he blamed Dr. Allen for denying him a career as a neuro-surgeon. For years Mettetal kept track of Dr. Allen's whereabouts and activities, and it could be inferred that Mettetal was making plans to exact revenge. However, when the Vanderbilt campus police arrested Mettetal, they knew nothing of his grudge against Dr. Allen. Instead, what they knew about Mettetal was gleaned from a complaint and a forty-minute encounter with him.

> At around 9:50 a.m. on August 22, 1995, Christy Wilson, a medical center employee, saw Mettetal on the second floor of the institution's parking garage. Wilson became suspicious because Mettetal was "looking around at cars" and was wearing a fake beard, a wig, and a dark suit on what was a hot, 90-degree morning. Wilson called the Vanderbilt campus police, and Sergeant James Campbell, Officer Jennifer West, and several other officers responded. The officers were advised by the dispatcher that "there was a male subject wearing a beard and he had been going through the garage parking lot." Officer West was instructed to go to the scene (the second floor of the garage), and Sergeant Campbell drove around the outside of the garage in his patrol car. As Officer West neared the garage, Sergeant Campbell radioed, saying that he was already talking with the man on Garland Avenue, a street that fronted the garage.

> Sergeant Campbell had spotted Mettetal from his patrol car at about 10:00 a.m. Campbell noticed that Mettetal "had a dark wig on, a beard, and he was wearing a three piece suit" and carrying a black nylon bag. (Another officer said that Mettetal, who is white, "had an obvious fake Afro wig and a fake beard that looked like Abraham Lincoln.") Sergeant Campbell stopped his car a few feet behind

4

Mettetal, got out, and called for Mettetal to stop. Mettetal complied. Campbell then instructed Mettetal to put down his bag, and asked Mettetal "his business." Mettetal put down his bag and responded to Campbell's question by saying that "he had a girlfriend that he was trying to — he [thought] she was seeing someone else and he was watching her." After accusing Mettetal of stalking, the officer asked him the woman's name. Mettetal replied that he would rather not give her name.

At about this time Officer West and several other officers arrived and positioned themselves around Mettetal. Sergeant Campbell and at least one other officer continued to question Mettetal, who repeatedly declined to provide any information. Mettetal did ask to speak with a lawyer, but this request was ignored. When Campbell asked Mettetal for identification, Mettetal at first said he had none. Campbell continued to press Mettetal for identification, finally saying, "sir, if you can't produce any identification, I'm going to have to take you down for trespassing." At that point, Mettetal gave Sergeant Campbell "British West Indies" identification ("ID") in the name of Steven Ray Maupin. The officers suspected that the ID was a fake. This suspicion was based on the fact that the ID's covering had rough edges, indicating that it had been laminated quite recently. For about the next thirty minutes the officers had their dispatcher run computer checks on the name Steven Ray Maupin. In the meantime, Mettetal was perspiring heavily in the hot sun, and his fake beard and moustache had begun to peel off. Still, he was calm and polite throughout the encounter.

After the computer checks produced no information, Mettetal was arrested for criminal trespass. . . .

After Mettetal was placed under arrest, his bag and person were searched. In the bag, the police found, among other things, sketches and information about an automobile, fake tattoos, and a large hypodermic syringe filled with a clear liquid. On him, they found more identification in the name of Steven Ray Maupin. Once Mettetal was taken into custody, he refused to answer questions or to disclose his true identity. The next day, the Nashville police learned from the FBI that he was Ray Wallace Mettetal, Jr., a medical doctor from Harrisonburg, Virginia.

On August 25, 1995, three days after Mettetal's arrest, Virginia police obtained warrants to search his home and office. The information used to support these warrants came directly from the circumstances surrounding Mettetal's arrest, the search incident to his arrest, and discussions with his children and former wife. (The police learned from Mettetal's family that he hated Dr. Allen and that he owned several high-powered firearms.) The search of Mettetal's office produced nothing of consequence. But in Mettetal's home the police found bogus identification documents in the name of Steven Ray Maupin, fake hair, moustaches, makeup, a hospital uniform from the Vanderbilt medical center, and a book on disguise techniques that contained notes describing the home, cars, and personal history of Dr. Allen. The Maupin identification materials had Mettetal's photo on them.

5

Within a day or two of Mettetal's arrest, a story about it (and his use of the Maupin alias) appeared in a local Virginia newspaper. An employee at a Harrisonburg mini-storage unit facility saw the story and reported to the police that he had rented a unit in December 1994 to someone purporting to be Steven Ray Maupin. Using the information discovered as a result of Mettetal's arrest, including that gleaned from the search of his home, the police obtained a warrant for the search of the storage unit. The search of the unit turned up a large jar of ricin, a deadly toxin.

*Id.* at **1-3.

In addition to the searches of Mettetal's residence and storage unit by the Harrisonburg Police Department, a search of Mettetal's car was also conducted by the Metropolitan Washington Airport Authority ("MWAA") Police Department at Washington National Airport ("National Airport") in Arlington, Virginia. *See United States v. Mettetal*, No. 3:96-CR50034, 2001 WL 1013230, at *3 (W.D. Va. Aug. 31, 2001). It appears that the search warrant executed by the MWAA relied upon information supplied by Tennessee law enforcement. *See id.* at *4.

## B. Procedural History

### 1. Criminal Proceedings

In 1998, Mettetal was tried and convicted in the U.S. District Court for the Western District of Virginia on two federal charges: possession of a toxin (i.e., ricin) for use as a weapon, in violation of 18 U.S.C. § 175, and possession with intent to use five or more false identification documents, in violation of 18 U.S.C. § 1028(a)(3).[1] The Fourth Circuit vacated Mettetal's

---

[1]In August 1995, Mettetal was also indicted in the U.S. District Court for the Middle District of Tennessee for violation of 18 U.S.C. § 1001 (i.e., mail fraud). *United States v. Mettetal*, No. 01-5757, 2002 WL 927023, at **1 (6th Cir. May 7, 2002) ("*Mettetal IV*"). These proceedings were continued in light of pending actions in Tennessee state court for attempted murder and in the U.S. District Court for the Western District of Virginia. In October 1999, the Tennessee state trial court ruled that Vanderbilt police lacked probable cause to arrest Mettetal and suppressed all evidence seized during the search incident to his arrest and all evidence seized pursuant to the search warrants issued in Virginia. Also in 1999, the U.S. District Court for the Middle District of Tennessee dismissed Mettetal's indictment for mail fraud without prejudice in light of Mettetal's conviction

conviction, concluding that there had been no probable cause to arrest Mettetal for criminal trespass and that the ricin jar and the false identification documents used to convict Mettetal should have been suppressed as the fruit of Mettetal's unlawful arrest. *See Mettetal I*, 2000 WL 530330, at **6. On remand, District Judge James Michael, Jr. denied Mettetal's motion to dismiss the indictment, concluding that the evidence could be admitted pursuant to the good faith exception. *See United States v. Mettetal*, No. CRIM. A. 3:96CR50034, 2000 WL 33232324, at *10 (W.D. Va. June 16, 2000) ("*Mettetal II*"). Mettetal was retried and again convicted. On appeal, the Fourth Circuit once again vacated Mettetal's conviction, concluding that the district court exceeded the scope of the Fourth Circuit's mandate in *Mettetal I* by reconsidering the admissibility of evidence that the Fourth Circuit had previously excluded. *See United States v. Mettetal*, No. 02-4120, 2002 WL 31375600, at **2 (4th Cir. Oct. 23, 2002) ("*Mettetal V*"). On December 10, 2002, the U.S. District Court for the Western District of Virginia granted the government's motion to dismiss the indictment against Mettetal.

## 2. Civil Proceedings

On October 2, 2000, Mettetal filed a complaint in the U.S. District Court for the Middle District of Tennessee against: (1) Vanderbilt University and Officer Edna Sue Pully, Officer Jennifer D.K. West, Officer Donnie Young, Lieutenant Jackson, Sergeant James Campbell, and Director Allan R. Guyet of the Vanderbilt University Department of Security, in their individual and official capacities; (2) the Metropolitan Government of Nashville and Davidson County ("Metropolitan Nashville"); (3) several officers of the Metropolitan Nashville Police Department in their individual and official capacities (i.e., Sergeant Thomas Burke, Officer Gray, Officer

---

on more serious charges in the U.S. District Court for the Western District of Virginia.

7

Bradley Putnam, Detective David Miller, Captain L.M. Miller, Lieutenant Tommy Jacobs, and five unknown Metropolitan Nashville Police Department detectives); (3) Federal Bureau of Investigation ("FBI") Special Agent J. Stephen Dickey, in his individual and official capacities; (4) David Dixon, U.S. Marshal for the Middle District of Tennessee, in his individual and official capacities; (5) Sheriff Gayle Ray, supervisor of the Metropolitan Nashville jail, in her individual and official capacities; (6) unknown employees of the Metropolitan Nashville jail; (7) attorney Patrick T. McNally, who represented Mettetal during his criminal proceedings in the Middle District of Tennessee; (8) the Harrisonburg, Virginia Police Department and several of its officers (i.e., Investigator D.W. Cox, Investigator Tom D. Hoover, Officer W.H. Frank, Officer S. Antoine, and Lieutenant W.H. Holloway), in their individual and official capacities; (9) Sergeant Ken Hutton of the MWAA Police Department, in his individual and official capacities; (10) Hilliard Hester, Assistant United States Attorney ("AUSA") for the Middle District of Tennessee, in his individual and official capacities; (11) Davidson County Deputy District Attorney Thomas Thurman and Assistant District Attorney General Lisa Naylor, in their individual and official capacities; and (12) Metropolitan Nashville Police Department Public Information Manager Don Aaron, in his individual and official capacities.  On January 8, 2001, Mettetal filed an amended complaint adding the MWAA Police Department as a party, and on March 2, 2001, Mettetal again amended his complaint, this time adding as parties:  (1) AUSA Ray B. Fitzgerald of the Western District of Virginia, in his individual and official capacities; (2) the Director of the Bureau of Prisons, Federal Correctional Institution-Petersburg ("FCI-Petersburg") Wardens Stephen J. DeWalt and Joseph M. Brooks and employees Janet Clark and Ricardo Bradford, in their individual and official capacities; (3) District Judge James H. Michael, Jr. of the Western District of Virginia in his individual and official

8

capacities; and (4) John Burns Earle III and Marsha Garst (Mettetal's court-appointed attorneys in Virginia) in their individual capacities. On December 17, 2002, Mettetal filed his final amended complaint, which added as defendants: (1) U.S. Navy Captain James P. Buran of Bethesda, Maryland; (2) Dr. Ann Kelleher and Dr. Drew Richardson of the FBI laboratory in Quantico, Virginia; and (3) John F. Hewetson and Jennifer Hager of Fort Detrick, Frederick, Maryland.

Mettetal's final amended complaint describes Mettetal's suit as "a civil action for money damages brought pursuant to 42 USC sections 1983 and 1986, 18 USC sections 1983 and 1986, 18 USC section 1964(c) [the Racketeer Influenced and Corrupt Organizations Act ("RICO")], 28 USC 1346(b), and the Fourth, Fifth, Sixth, Eighth, Thirteenth and Fourteenth Amendments of the U.S. Constitution, and under the common laws of the states of Tennessee and Virginia" and enumerates fourteen causes of action. On appeal, Mettetal challenges three district court orders that resulted in the dismissal of all defendants and all claims in Mettetal's suit. The first order, entered on July 22, 2003, was issued by the district court *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2).[2] *See* 28 U.S.C. § 1915(e)(2) (providing that when a party proceeds *in forma pauperis*, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that — (A) the allegation of poverty is untrue; or (B) the action or appeal — (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."). The district court ordered all claims against District Judge James Michael, Jr., Gayle Ray, Don Aaron, the Director of the

---

[2]When Mettetal filed his first complaint on October 2, 2000, Mettetal had not been granted *in forma pauperis* status, and accordingly paid a filing fee of $150 to institute this action. Mettetal filed a motion to proceed *in forma pauperis* on November 7, 2000, and his motion was initially denied by the magistrate judge on November 9, 2000. Mettetal refiled his *in forma pauperis* motion on November 29, 2000, and the motion was granted by the magistrate judge on December 1, 2000.

Bureau of Prisons, Stephen DeWalt, Joseph Brooks, Janet Clark, and Ricardo Bradford to be dismissed with prejudice and all claims against Officer Gray and the MWAA Police Department dismissed without prejudice.

The second order, entered on March 8, 2004, adopted over Mettetal's objection the magistrate judge's February 13, 2004 Report and Recommendation ("R&R") with respect to various motions to dismiss. As a result, the claims against Vanderbilt University, Edna Sue Pully, Jennifer D.K. West, Donnie Young, James Campbell, Allen R. Guyet, John Jackson, Tom Thurman, Lisa Naylor, Thomas Burke, Brad Putnam, Thomas Jacobs, L.M. Miller, David Miller, the Metropolitan Nashville Government, Hilliard Hester, David Dixon, and Stephen Dickey were dismissed with prejudice, and the claims against the Harrisonburg Police Department, Tom D. Hoover, D.W. Cox, W.H. Frank, W.H. Holloway, Kenneth Hutton, Ray B. Fitzgerald, and S. Antoine were dismissed without prejudice. In its March 8, 2004 order, the district court also denied Mettetal's motion to amend his complaint; quashed the summonses issued for the MWAA and S. Antoine; denied as moot several motions for stays of discovery; denied as moot MWAA's motion to dismiss; and denied Mettetal's motion for review and affirmed the magistrate judge's order denying Mettetal's motion for issuance of a subpoena duces tecum.

The third order from which Mettetal appeals was issued by the district court on March 19, 2004. In that order, the district court adopted the magistrate judge's March 8, 2004 R&R; granted Earle and Garst's motion to dismiss; granted McNally's motion for summary judgment; dismissed all claims against Earle, Garst, and McNally; dismissed all claims against Kelleher, Burans, Hewetson, and Hager; dismissed all claims against Richardson; denied Mettetal's motion for change of venue; and directed that the case be closed.

10

## II. ANALYSIS

After reviewing the district court record and the parties' briefing, we conclude that the district court's judgment should be affirmed, with the following exceptions:

**A. Dismissal of Claims Against Vanderbilt and Metropolitan Nashville Police Department Defendants**

The district court below dismissed with prejudice all claims against the "Vanderbilt Defendants" (i.e., Vanderbilt University, Edna Sue Pully, Jennifer D.K. West, Donnie Young, James Campbell, Allen R. Guyet, and John Jackson) and the "Metropolitan Nashville Police Department Defendants" (i.e., Thomas Burke, Brad Putnam, Thomas Jacobs, L.M. Miller, David Miller, and the Metropolitan Nashville Government) on the grounds that: (1) Mettetal's § 1983 claims were barred by the statute of limitations, (2) Mettetal failed to state a claim under § 1986, and any such claims would be barred by the statute of limitations, and (3) Mettetal failed to state a claim for a violation of RICO, and any RICO claims would be barred by the statute of limitations. We conclude that although the district court did not err in dismissing Mettetal's § 1986 and RICO claims for failure to state a claim, the district court did err in dismissing Mettetal's § 1983 claims on statute-of-limitations grounds. We also believe that Mettetal has sufficiently alleged the existence of a § 1983 civil conspiracy between the Vanderbilt Defendants and the Metropolitan Nashville Police Department Defendants to overcome a motion to dismiss.

### 1. Statute of Limitations

The district court ruled that Mettetal's § 1983 claims against the Vanderbilt Defendants and the Metropolitan Nashville Police Department Defendants should be dismissed because Mettetal filed these claims on October 2, 2000, more than five years after Mettetal's August 22, 1995 arrest. Although the district correctly determined that a one-year statute of limitations governs § 1983

11

claims filed in Tennessee, *see Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir.), *cert. denied*, 540 U.S. 876 (2003); *see also* TENN. CODE ANN. § 28-3-104(a)(3), the district court erred in concluding that Mettetal's § 1983 claims against the Vanderbilt Defendants and the Metropolitan Nashville Police Department Defendants accrued at the time of Mettetal's arrest.

In *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 399 (6th Cir.), *cert. denied*, 528 U.S. 1021 (1999), we ruled that, in light of the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), the statute of limitations does not begin to run on a criminal defendant's § 1983 claim until the criminal charges have been dismissed if the § 1983 claim could bring the claimant's criminal conviction into question. As we explained in *Shamaeizadeh*:

> To require a defendant in a criminal proceeding to file a civil action raising any potential § 1983 claims within one year of any alleged illegal searches or other alleged violations of constitutional rights, claims which the federal court must then abstain from resolving until the disposition of the criminal proceedings, would misdirect the criminal defendant. Surely, just as a convicted prisoner must first seek relief through habeas corpus before his § 1983 action can accrue, so too should the defendant in a criminal proceeding focus on his primary mode of relief — mounting a viable defense to the charges against him — before turning to a civil claim under § 1983.

*Id.* Mettetal's § 1983 claims against the Vanderbilt Defendants and Metropolitan Nashville Defendants would have called into question the validity of a potential conviction because the evidence obtained as the fruit of Mettetal's alleged false arrest and illegal search (such as the false identification documents and the ricin jar) were at the core of the criminal proceedings against Mettetal. *See id.* at 398; *see also Wolfe v. Perry*, 412 F.3d 707, 714-15 (6th Cir. 2005). Thus, we conclude that the statute of limitations did not begin to run on these § 1983 claims until the criminal

12

charges against Mettetal were dismissed in December 2002, and thus the dismissal of these claims by the district court was in error.[3]

## 2. Section 1983 Civil Conspiracy

We also believe that Mettetal's complaint sufficiently alleges a claim for civil conspiracy under § 1983 against the Vanderbilt Defendants and the Metropolitan Nashville Police Department Defendants to withstand a motion to dismiss. As we explained in *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985):

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

Although the district court ruled that Mettetal's allegation of conspiracy were too vague to state a claim, *see Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004) ("Claims of [civil] conspiracy must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim."), Mettetal's allegations that the Vanderbilt Defendants and the Metropolitan Nashville Police Department Defendants conspired to falsely arrest Mettetal are sufficiently specific to survive a motion to dismiss. R. 19 (Final Am. Compl. at 10-11)

---

[3]Mettetal filed his complaint against the Vanderbilt Defendants and the Metropolitan Nashville Police Department Defendants in October 2000, i.e., before his indictment was dismissed in December 2002. However, we conclude that it would be improper for us to affirm the dismissal of Mettetal's § 1983 claims on the basis that they were filed prematurely because the criminal charges against Mettetal had been dismissed well before the district court ruled on the motion to dismiss Mettetal's § 1983 claims. *Cf. Heck v. Humphrey*, 512 U.S. 477, 487 n.8 (1994) (explaining that "if a state criminal defendant brings a federal civil-rights lawsuit during the pendency of his criminal trial, appeal, or state habeas action, abstention may be an appropriate response to the parallel state-court proceedings").

("Campbell conferred with the Metro Nashville police. Campbell was encouraged to proceed with the false arrest and illegal searches of the PLAINTIFF's person and briefcase by Metro PD Officers Bradley Putnam and Tommy Berk. The VUSD officers function with the same full force and authority of the Metro Nashville police because they are sworn, trained, and bonded in the same or similar manner as the Metro Nashville police. Campbell 'worked in concert'/conspired with the Metro Nashville police in the false arrest. . . . Campbell's testimony documents the established policy and custom of these two police forces to corroborate [collaborate?] in the execution and commission of false arrests."); *see Memphis, Tennessee Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905-06 (6th Cir. 2004) (describing allegations of civil conspiracy that were sufficient to overcome a motion to dismiss). However, to the extent that Mettetal alleges that these defendants engaged in a conspiracy illegally to interrogate Mettetal or that they conspired with the Harrisonburg Police Department and the MWAA illegally to search Mettetal's home, car, and storage unit, the district court was correct in dismissing such claims for failure to allege that the parties entered into any kind of agreement or formed a single plan. *See Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).

B. **Dismissal of Count Two Against U.S. Marshal David Dixon and FBI Special Agent Stephen Dickey**[4]

In Count Two of his final amended complaint, Mettetal alleges that Defendants David Dixon and Stephen Dickey were present during his supposed illegal interrogation by Metropolitan Nashville Detective David Miller and that Dixon and Dickey did nothing to stop the interrogation. The district court below determined that this claim should be dismissed based on the statute of

---

[4]We affirm the judgment of the district court dismissing the claims against Dixon and Dickey based on Count Nine of Mettetal's final amended complaint.

limitations because "all of the alleged actions taken by defendants Dixon and Dickey occurred in 1995. . . ." R. 211 (Feb. 13, 2004 Magistrate Judge R&R at 21). We, however, believe such a determination to be in error. First, to the extent that Mettetal has alleged that Dixon and Dickey violated his Fifth Amendment right against self-incrimination, we conclude that Mettetal's claim would not have accrued at the time of the allegedly illegal interrogation, but rather only after Mettetal's statements were introduced at trial. *See McKinley v. City of Mansfield*, 404 F.3d 418, 438 (6th Cir. 2005) ("We read the Fifth Amendment's requirement that a plaintiff's statements be used in a criminal proceeding as essentially one of standing. Where such use of the statements has not occurred, the plaintiff may not sue because he has not suffered the injury against which the Fifth Amendment protects."). Second, neither the magistrate judge nor the district judge considered whether, under *Shamaeizadeh*, Mettetal's self-incrimination and right-to-counsel claims against Dixon and Dickey were filed in a timely fashion. Because we cannot definitively determine, based on the record before us, that Mettetal's claims against Dixon and Dickey would not have called into question the validity of the criminal proceedings against Mettetal,[5] we vacate the district court's order dismissing the claims against Dixon and Dickey in Count Two of Mettetal's complaint and remand for further consideration in light of this opinion.

## C. Appointment of Counsel

Because Mettetal does not appear to have filed with the district court a motion for the appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1), and because this court reviews the denial of such requests only for an abuse of discretion, we decline to grant Mettetal's request for appointment of counsel at this time and instead allow the district court to consider the request in the

---

[5]For instance, the record before us does not indicate whether any statements made by Mettetal during this allegedly illegal interrogation were introduced at trial.

15

first instance.  *See Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993); *see also Lince v. Youngert*, No. 03-2193, 2005 WL 1385918, at *2-3 (6th Cir. June 3, 2005).[6]

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM IN PART, REVERSE IN PART,** and **VACATE IN PART** the decisions of the district court, and we **REMAND** for further proceedings.

---

[6]In his Supplemental Brief, Mettetal cites 42 U.S.C. § 1988 as the statutory basis for his request for appointment of counsel. Pl.-Appellant's Supplemental Br. at 22. Section 1988, however, provides for the award of attorney fees, not the appointment of counsel. *See* 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of sections . . . 1983, 1985, and 1986 of this title . . ., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."). Thus, Mettetal's request for counsel has been treated as being filed pursuant to 28 U.S.C. § 1915, the *in forma pauperis* statute. *See* 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel.").